### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:    **CRAIG ATKINS,** | : | |
| | : | **Chapter 13** |
| **Debtor.** | : | |
| | : | **Bky. No.  14-14696 ELF** |
| | : | |
| | : | |
| **CRAIG ATKINS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Adv. No. 14-0330 ELF** |
| **GELT PROPERTIES, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this adversary proceeding, the chapter 13 debtor seeks to avoid a mortgage on real property by invoking the chapter 13 trustee's status as a hypothetical bona fide purchaser and avoidance power under 11 U.S.C. §544(a)(3).  The debtor asserts that a bona fide purchaser may avoid the subject mortgage because the original mortgagee assigned the mortgage and the assignee did not record the assignment in the public record.  The debtor also asserts a claim for equitable subordination of the mortgage.

Presently before the court is a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6).  For the reasons explained below, I will grant the motion and dismiss the complaint with prejudice.

## II.  PROCEDURAL HISTORY

Craig O. Atkins ("the Debtor") filed a chapter 13 bankruptcy case in this court on June

10, 2014.  (Bky. No. 14-14696).  He commenced this adversary proceeding by filing a complaint

against Defendant Gelt Properties, LLC ("Gelt") on July 23, 2014.[1]

The Complaint included three (3) counts:

> (1)  Count I: a request for a declaratory judgment that the Debtor's interest as a
>       hypothetical bona fide purchaser for value is superior to that of Gelt;
>
> (2)  Count II: a claim for avoidance of Gelt's mortgage under 11 U.S.C.
>       §544(a)(3); and
>
> (3)  Count III: a demand for turnover of the subject real estate from Gelt (in
>       Gelt's capacity as pre-petition state court receiver).

On September 15, 2014, Gelt filed a Motion to Dismiss Debtor's Complaint, or in the

Alternative for Summary Judgment, (Doc. # 4), to which the Debtor responded on October 22,

2014.

By order dated October 23, 2014, the court granted Gelt's Motion and dismissed the

Complaint.  The court dismissed Count III with prejudice, but granted the Debtor leave to file an

amended complaint with respect to Counts I and II.

The Debtor filed an Amended Complaint on November 7, 2014.  (Doc. # 15).  In the

Amended Complaint, the Debtor added three (3) additional parties: Federal Deposit Insurance

---

[1]      The Debtor also named William C. Miller, the Chapter 13 Trustee, as a nominal
defendant, using the term "Interested Party."

Corporation ("FDIC"), National Penn Bank ("NPB") and Capital Bank, N.A. ("Capital").[2]  The

Amended Complaint again requested declaratory relief and asserted an avoidance claim under 11

U.S.C. §544(a)(3).  It also asserted a new claim, for either the equitable subordination or the

"striking" of the subject mortgage.

On December 8, 2014, Gelt again filed a Motion to Dismiss Debtor's Amended

Complaint, or in the Alternative for Summary Judgment ("the Motion") (Doc. # 17).  The Debtor

filed his response to the Motion on January 8, 2015.  (Doc. # 30).  None of the new Defendants

have responded to the Amended Complaint.[3]


### III.  APPLICABLE LEGAL STANDARD  –  RULE 12(b)(6)

The purpose of a motion to dismiss a case under Fed. R. Civ. P. 12(b)(6) (incorporated by

Fed. R. Bankr. P. 7012) is to test the legal sufficiency of the factual allegations of a complaint,

see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993), and to determine whether a plaintiff is

"entitled to offer evidence to support the claims," Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

563 n.8 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A defendant is entitled to dismissal of a complaint only if the plaintiff has not pled

"enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547.

---

[2]      Again, the Chapter 13 Trustee was named as a nominal defendant.  He has not
participated in the adversary proceeding.

[3]      Both the bankruptcy case and this adversary proceeding initially were assigned to the
docket of Hon. Magdeline D. Coleman.  By order dated December 17, 2014, Judge Coleman recused
herself.  (Bky No. 14-14696, Doc. # 84).  Shortly thereafter, by random reassignment, the Clerk placed
the main case and this adversary proceeding on my docket.

A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities); In re Olick, 2011 WL 2565665, at *1–2 (Bankr. E.D. Pa. June 28, 2011).[4]

In deciding a motion to dismiss a complaint under Rule 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby Township Zoning Board, 458 F.3d 181, 188 (3d Cir. 2006). However, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Finally, in assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as,] 'undisputedly authentic documents' where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss." Unite Nat'l Ret.

---

[4]    The Third Circuit Court of Appeals condensed these principles into a three (3) part test:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993));

see also In re Angulo, 2010 WL 1727999, at *12 n.1 (Bankr. E.D. Pa. Apr. 23, 2010).[5]


## IV.  STATEMENT OF FACTS

For purposes of deciding the Motion, I accept the following facts as true based on the

allegations in the Amended Complaint and the admitted or indisputably authentic documents

attached to the Motion.


### The Loans, Mortgage Documents, Assignments and Recordations

1.  On September 23, 2003, the Debtor, along with Andrew Duren and Joel Davenport

(collectively, "the Purchasers"),[6] purchased the real property located at 223-25 High Street,

---

[5]      Gelt has attached various documents to the Motion.  These documents either are referred
to in the Amended Complaint, are admittedly authentic or are indisputably authentic.  Therefore, I may
consider these documents in deciding the Motion under Rule 12(b)(6) and it is unnecessary to treat the
Motion as a Rule 56 summary judgment motion.

         I also note that the Debtor's counsel has made a hash of the record.  The Amended
Complaint filed with the court is missing Paragraphs 10-19.  (See Doc. # 15).  For some reason, the page
with the missing paragraphs of the Amended Complaint may be found as the 45th page of the 60 page
Exhibit packet filed on the docket immediately following the Amended Complaint.  (Doc. # 16).  Even
worse, the Exhibit packet Debtor's counsel filed to acompany the Amended Complaint is identical to the
Exhibit packet filed with the original Complaint, even though the Exhibit sequence differs in the two (2)
pleadings.  Counsel's misplacement of the page containing Paragraphs 11-19 and laziness in simply
refiling the original exhibit packet without modification caused unnecessary work for the court and,
undoubtedly, his opposing counsel.  He should be embarrassed.


[6]      None of the parties have addressed the ramifications, if any, of the fact that the Debtor,
who is only a co-owner of the Property, appears to be seeking the avoidance of a mortgage lien against
the Property as a whole.  In light of my disposition of the adversary proceeding, I need not further

(continued...)

Phoenixville, PA ("the Property") for the sum of $400,000.00.  (See Am. Compl., Ex. A).

2.  The Purchasers financed the transaction through two (2) mortgage loans:

    (a) a loan from Gelt Business Credit, LLC ("GBC") in the amount of $225,000.00 ("the
        GBC Mortgage Loan"), secured by a mortgage on the Property;

    (b) a loan from Lee Erb in the amount of $135,00.00 ("the Erb Mortgage Loan"), secured
        by a mortgage on the Property.

3.  On September 18, 2003, Erb recorded a mortgage against the Property on account of the Erb

    Mortgage Loan in the office of the Chester County Recorder of Deeds.  (Am. Compl., Ex. C).

4.  On September 18, 2003, GBC recorded a mortgage ("the Mortgage") against the Property on

    account of the GBC Mortgage Loan in the office of the Chester County Recorder of Deeds.

    (Am. Compl., Ex. B).[7]

5.  In connection with the GBC Mortgage Loan Transaction, the Purchasers also granted GBC an

    Assignment of Rents, Leases and Agreements of Sale ("the Assignment of Rents"), which

    was recorded September 18, 2003.

6.  The GBC loan was "table funded."[8]

---

[6](...continued)
consider that circumstance.

[7]    The purchase price for the Property and the loan amounts are not stated in the Amended
Complaint, but are set forth in the Exhibits.  (See Exs. A through C).

[8]    The Amended Complaint does not define the term "table funded."  Presumably, the
Plaintiff is using the term to refer to a transaction in which "the debt obligation initially [is] payable by
its terms to one person, but another person provides the funds for the transaction at consummation and
receives an immediate assignment of the note, loan contract, or other evidence of the debt obligation."
12 C.F.R Pt. 226, Supp. I, at §226.36 (36(a)1.(ii.)) (2011); accord Thomas v. CitiMortgage, Inc., 2013
WL 4786060, at *5 (D. Mass. Sept. 5, 2013).

7. On September 18, 2003, Defendant NPB recorded a Collateral Assignment of Mortgage

which stated:

    a.  GBC had "sold two thirds of [the GBC Mortgage Loan of $225,000.00] to Public
          Savings Bank ("Public"); and

    b.  GBC had assigned to NPB its remaining interest in the GBC Mortgage Loan "[a]s
          security for repayment" of an NPB loan to GBC of no more than $67,500.00.

(Am. Compl., Ex. E).

8. Public did not record any document reflecting the assignment of GBC's interest in the GBC

Mortgage Loan to Public.

9. On or about September 28, 2007, Public executed an Assignment of Mortgage, reassigning

"all of its right, title and interest" in the Mortgage back to GBC.  (See Am. Compl., Ex. F).[9]


**The Relationship of the Gelt Entities**

10. On September 11, 2006, GBC merged into Gelt Financial Corporation ("GFC").[10]

---

[9]     In the Amended Complaint, the Debtor suggests that the mortgage assignment represents itself as constituting a transfer of "the **entire** loan . . . back to [GBC]." (Amended Complaint ¶ 24). I take the Debtor's point to be that this was a misrepresentation because NPB, too, had an interest in the Mortgage.  Putting aside whether any of this matters, I perceive no misrepresentation in the document.  It refers only to an assignment of Public's "interest" in the mortgage without stating the extent of that interest.

[10]     From this chronology, it is apparent that in September 2007, GBC had already merged into GFC.  Yet, the Public Assignment of Mortgage states that it is assigning its interest in the mortgage to GBC (an entity which no longer existed), not GFC.  I need not consider the consequences, if any, of this anomaly.  As discussed in Part V., infra, the Debtor's avoidance claim is based on §544(a)(3).  As such, it is grounded in the state law rights of a subsequent purchaser for value and whether a subsequent purchaser had notice of Gelt's claimed interest in the Property, not whether Gelt's claimed interest is valid.  The validity of Gelt's interest in the Mortgage is not at issue in this adversary proceeding and is being litigated in another forum.  See Part V.C.4, infra.

11. On January 29, 2014, Gelt Financial Corporation merged into Gelt.

12. On August 11, 2011, Public Savings Bank was "taken over" by Defendant FDIC and all of its

assets subsequently sold to Defendant Capital.  (Am. Compl. ¶¶ 34-35).

### State Court Foreclosure Proceeding

13. On January 17, 2011, GFC (by then, GBC's successor-in-interest)[11] filed a foreclosure action

("the C.P. Action") against the Debtor and the co-owners of the Property in the Court of

Common Pleas, Chester County ("the C.P. Court").

14. On October 21, 2013, following the non-jury trial, the C.P. Court entered a decision in favor

of GFC in the amount of $381,491.77 ("the C.P. Court Decision").  (Am. Compl., Ex. G).

15. On or before December 5, 2013, the C.P. Court docketed the C.P. Court Decision on the

count judgment index.  (Am. Compl. ¶ 28).

16. On November 18, 2013, the Debtor appealed the C.P. Court Decision to the Pennsylvania

Superior Court.

17. On January 27, 2014, the appeal was quashed by the Superior Court because it was taken

before the entry of judgment in the C.P. Action.[12]  (Am. Compl., Ex. H).

---

[11]     In his response to the Motion, the Debtor denies that Gelt is the successor-in-interest to GBC with respect to the subject mortgage.  (Debtor's Answer to Motion ¶7).  However, this denial is inconsistent with the Amended Complaint.  In Paragraph 7, the Debtor acknowledges that the records of the Pennsylvania Department of State reflect that GBC merged into GFC in September 2006 and that GFC merged into Gelt in January 2014.

[12]     Pennsylvania civil practice distinguishes between a state court decision following trial and the entry of judgment.  After a "decision" has been made (be it a non-jury decision or a jury verdict), a judgment may be entered only after post-trial motions have been decided or the time for filing such motions has expired.  See Pa. R. Civ. P. 227.1, 227.4.  Ordinarily, an appeal may be taken only from a

(continued...)

18. The Superior Court order quashing the appeal was entered on the docket in the C.P. Action on March 20, 2014.

19. The C.P. Court Decision of October 21, 2013 has not been entered as a judgment in the C.P. Action.

## State Court Receivership Petition

20. On July 24, 2013, prior to trial of its foreclosure claim, GFC filed a Petition for Appointment of a Receiver with respect to the Property in the pending foreclosure action in the C.P. Court. (Am. Compl., Ex. G).[13]

21. The C.P. Court did not act on the Petition for Appointment of Receiver until after the foreclosure trial.  By order dated May 10, 2014, the C.P. Court granted GFC's receivership petition and appointed GFC as a receiver of the Property, "with all powers available to a receiver at law and equity," including the right to take possession of the Property and collect all rents, issues and profits ("the Receivership Order").  (Id.; Motion, Ex. F).

22. On June 4, 2014, (six (6) days before commencing this bankruptcy case), the Debtor appealed the Receivership Order to the Pennsylvania Superior Court.

---

[12](...continued)
judgment, not a decision. See, e.g., Reuter v. Citizens & Northern Bank, 599 A.2d 673, 675-76 (Pa. Super. Ct. 1991); see also McCormick v. Northeastern Bank of Pennsylvania, 561 A.2d 328, 329 (Pa. 1989).

[13]      The request for a receiver was grounded in the Assignment of Rents granted to GBC (GFC's predecessor) and GFC's contention that it had issued a demand for rents to the tenants of the Property on June 19, 2013.  (See Ex. E to Motion).  In his response to the Motion, the Debtor did not deny that GBC made the demand for rent but asserted only that the demand was improper because it was not made by proper "the party in interest."  (Debtor's Answer to Motion ¶ 11).

### Recordation

23. Other than the mortgage recorded by GBC and the NPB Collateral Assignment of Mortgage,

see Statement of Facts Nos. 4 and 7, supra, no other mortgages or assignment of mortgages

were recorded by any of the parties in this adversary proceeding, i.e., GFC, Gelt, FDIC or

Capital Bank.

## V.  THE DEBTOR'S §544(a)(3) CLAIM

### A.

In Counts I and II, the Debtor seeks to avoid the Mortgage and the interest of all the

Defendants who were assigned an interest therein as referenced in the Statement of Facts.[14]  In

doing so, he invokes two (2) statutory provisions: 11 U.S.C. §544(a) and 21 P. S. §351.

11 U.S.C §544(a) provides:

> The trustee shall have, as of the commencement of the case, and without
> regard to any knowledge of the trustee or of any creditor, the rights and
> powers of, or may avoid any transfer of property of the debtor or any
> obligation incurred by the debtor that is voidable by

. . .

---

[14]      In Count I, the Debtor asks that the court declare that he has the authority to avoid the
Mortgage under 11 U.S.C. §544(a).  In Count II, the Debtor asserts a claim for avoidance of the Mortgage
under 11 U.S.C. §544(a).  Count I's request for declaratory relief adds nothing to Count II.  Therefore, I
will consider Counts I and II as a single claim for transfer avoidance and I will not separately evaluate the
claim for declaratory relief.  See 10B C. Wright & A. Miller, Federal Practice and Procedure §2758 (3d
ed. West 2014) (footnote omitted) (while existence of alternative remedy does not preclude declaratory
relief, "in the exercise of the discretion that it always has in determining whether to give a declaratory
judgment, [a court] properly may refuse declaratory relief if the alternative remedy is better or more
effective"); accord Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, 261 F. Supp. 2d 837, 846-47
(E.D. Mich. 2003).

(3)  a bona fide purchaser of real property, other than fixtures, from the
debtor, against whom applicable law permits such transfer to be
perfected, that obtains the status of a bona fide purchaser and has
perfected such transfer at the time of the commencement of the case,
whether or not such a purchaser exists.

Section §544(a)(3) grants the trustee the powers under applicable nonbankruptcylaw that

a bona fide purchaser for value would have to avoid a transfer of an interest in real property.

Succinctly put, §544(a)(3) "allow[s] the bankruptcy trustee to invalidate unperfected or

improperly perfected prepetition liens, including statutory liens, by asserting the rights of a

hypothetical <u>bona fide</u> purchaser."  <u>In re McLean</u>, 97 B.R. 789, 794 (Bankr. E.D. Pa.), <u>aff'd</u> 891

F.2d 474 (3d Cir. 1989).

A cardinal principle in the application of the trustee's §544(a)(3) avoidance power is that

"[a]lthough federal bankruptcy law establishes the bona fide purchaser status of the

trustee, the trustee's rights in that capacity are fixed by relevant state law."  <u>E.g.</u>, <u>In re Best</u>, 417

B.R. 259, 281 (Bankr. E.D. Pa. 2009) (citing <u>McCannon v. Marston</u>, 679 F.2d 13, 15–16 (3d Cir.

1982)).  This principle leads the analysis to the second statutory provision cited by the Debtor, 21

P.S. §351.

Section 351 provides, in pertinent part:

All deeds, conveyances, contracts, and other instruments of writing
. . .  shall be recorded in the office for the recording of deeds in the county
where such lands, tenements, and hereditaments are situate.  **Every such** deed,
**conveyance**, contract, or other instrument of writing which shall **not** be
acknowledged or proved and **recorded**, as aforesaid, **shall be adjudged
fraudulent and void as to any subsequent bona fide purchaser** or
mortgagee or holder of any judgment, duly entered in the prothonotary's office
of the county in which the lands, tenements, or hereditaments are situate,
**without actual or constructive notice** unless such deed, conveyance,
contract, or instrument of writing shall be recorded, as aforesaid, before the
recording of the deed or conveyance or the entry of the judgment under which

-11-

such subsequent purchaser, mortgagee, or judgment creditor shall claim. . . .

(emphasis added).

It is a venerable, incontrovertible principle in Pennsylvania that the purpose of recording statutes, such as 21 P.S. §351, "is to give public notice in whom the title resides; so that no one may be defrauded by deceptive appearance of title." Salter v. Reed, 15 Pa. 260, 263 (1850); see also In re Fisher, 320 B.R. 52, 63 (E.D. Pa. 2005). Consistent with that purpose, the Third Circuit Court of Appeals has held that under the relevant state statute, 21 P.S. §351, subsequent purchasers have priority over the rights of prior purchasers only if they are bona fide purchasers for value **without notice**. "Record notice defeats the claims of a subsequent purchaser." McCannon, 679 F.2d at 15; accord In re Aulicino, 400 B.R. 175, 185 (Bankr. E.D. Pa. 2008) ("Under Pennsylvania law, a bona fide purchaser may only prevail against an unrecorded interest, such as the one Movant holds, if he has no actual or constructive notice of the interest").[15]

Thus, assuming the Debtor may invoke the trustee's avoidance powers, but see Part C.1, infra, his claim has merit only if there was no record notice of the interest in property that he intends to avoid.

## B.

The Debtor advances a four (4) step argument in support of his §544(a)(3) claim.

First, he asserts that "as a debtor in possession," he may exercise the trustee's avoidance

---

[15]    Under Pennsylvania law, open possession of real property also may provide notice to subsequent purchasers, who may then have a duty to inquire into the possessor's claimed interest in the property. See McCannon, 679 F.2d at 15-16; see also In re Fowler, 425 B.R. 157, 198-99 (Bankr. E.D. Pa. 2010).

rights under 11 U.S.C. §544(a)(3) and therefore, should be considered to hold the rights of a <u>bona</u> <u>fide</u> purchaser for value under Pennsylvania law.  (Am. Compl. ¶ 38).

Next, citing <u>Montgomery County, Pa v. MERSCORP, Inc.</u>, 16 F. Supp. 3d 542, 557 (E.D. Pa. 2014), <u>leave to file interlocutory appeal granted and appeal pending</u>, Nos. 14-8117, 14-4315 (3d Cir.), he argues that the mortgage assignments from GBC to Public and from Public back to GBC are conveyances that must be recorded under 21 P.S. §315.

Third, the Debtor contends that a review of the Chester County land records would not have provided "notice of any interest of" GFC, Gelt, Public, FDIC or Capital.  (Am. Compl. ¶ 41).

Finally, as a result of the non-recordation of the mortgage assignments, the Debtor asserts that the interest in the Property of GFC (through whom Gelt makes its claim) "is inferior to the claim of the Debtor as a hypothetical bona fide purchaser for value."  (<u>Id.</u> ¶ 42).

## C.

The Debtor's argument in support of the merits of his §544(a)(3) claim fails for at least three (3) independent reasons.

## 1.

The Debtor's initial premise  – that he is a debtor-in-possession with the powers of a trustee – is erroneous.

A chapter 13 debtor is not a "debtor in possession."  In a  chapter 11 case, the debtor serves as "debtor in possession" with the powers of a trustee.  <u>See</u> 11 U.S.C. §1101(1), 1107.

Chapter 13 lacks a statutory analogue to §§1101(1) and 1107.   Instead, in a chapter 13 case,

there is a separate trustee, see 11 U.S.C. §1302, and the debtor is given certain powers of the

trustee, see 11 U.S.C. §1303.   The trustee's avoidance powers under 11 U.S.C. §§§544-549 **are**

**not** among those powers.   See 11 U.S.C. §1303.

There is a statutory vehicle through which a chapter 13 debtor may exercise the trustee's

avoidance powers: 11 U.S.C. §522(g) and (h).[16]   However, §522(g)(1) requires that the property

that the debtor seeks to recover: (1) must be property that the debtor could have exempted had it

not been transferred and (2) that the transfer to be avoided was involuntary.   Ultimately, the

Debtor seeks to avoid the mortgage he granted to GBC.   But, nothing in the Amended Complaint

---

[16]      Section 522(g) and (h) provide as follows:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt
> under subsection (b) of this section property that the trustee recovers under
> section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that
> the debtor could have exempted such property under subsection (b) of this
> section if such property had not been transferred, if—
>
>> (1)
>>> (A)   such transfer was not a voluntary transfer of such property by
>>> the debtor; and
>>>
>>> (B)   the debtor did not conceal such property; or
>>
>> (2)   the debtor could have avoided such transfer under subsection
>> (f)(1)(B) of this section.
>
> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff
> to the extent that the debtor could have exempted such property under
> subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
>> (1)   such transfer is avoidable by the trustee under section 544, 545, 547,
>> 548, 549, or 724(a) of this title or recoverable by the trustee under
>> section 553 of this title; and
>>
>> (2) the trustee does not attempt to avoid such transfer.

-14-

suggests that the Debtor's transaction with GBC was involuntary.

I acknowledge that there is legal authority supporting the proposition that a chapter 13 debtor may exercise the trustee's avoidance powers without satisfying the requirements of §522(g) and (h).  See e.g., In re Cohen, 305 B.R. 886, 895-900 (B.A.P. 9th Cir. 2004).  Cohen is grounded in a purported "holistic" construction of the Bankruptcy Code.   But I already have declined to follow Cohen, see In re Funches, 381 B.R. 471, 495-96 (Bankr. E.D. Pa. 2008), and I adhere to my holding in Funches.  In my view, the cogent policy arguments expressed in Cohen do not justify a departure from the application of the unambiguous statutory text, which provides that a chapter 13 debtor may exercise the chapter 13 trustee's avoidance powers only if the debtor can satisfy the requirements of §522(g) and (h).  In this adversary proceeding, where the Amended Complaint lacks any factual allegations that would support the requisite findings under §522(g) and (h), the Debtor's §544(a)(3) claim must fail.[17]

## 2.

The voluntariness of the original transfer  – the Debtor's grant of the Mortgage to GBC  – highlights another flaw in the Debtor's theory.

Section 544(a)(3) permits a bankruptcy trustee to set aside transfers of **the debtor**.  In this

---

[17]    Other courts have suggested that a chapter 13 debtor may obtain standing to assert the trustee's avoidance powers through an alternative path: the doctrine of derivative standing.  Under that doctrine, a court may confer standing on a party other than the trustee upon a showing that there is a colorable claim and that the trustee has unjustifiably refused to prosecute the claim.  See, e.g., In re Yelverton, 2012 WL 1229752d, at *2 (Bankr. D.D.C. Apr. 12, 2012); see generally  Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003).  Even assuming that the doctrine is applicable, the Amended Complaint makes no allegations that would support the grant of derivative standing.  I do not decide whether derivative standing to assert the trustee's avoidance powers is available to a chapter 13 debtor.

matter, there was only one (1) transfer made **by the Debtor**: the original grant of the Mortgage to GBC.

The critical point here is that the Debtor acknowledges that the initial transfer was properly recorded in the Chester County Department of Records.  (Am. Compl. ¶ 15).  That recordation provided notice sufficient to defeat the claim of any subsequent purchaser, including a bankruptcy trustee acting as a hypothetical <u>bona fide</u> purchaser for value under §544(a)(3). <u>See, e.g.</u>, <u>McCannon</u>, 679 F.2d at 15.  Thus, the Amended Complaint fails to state a plausible claim that the Debtor's initial grant of the Mortgage to GBC is avoidable under §544(a)(3).

To the extent the Debtor complains about the lack of recordation and notice to bona fide purchasers, that complaint relates exclusively to the transfers made by the initial transferee (GBC) to a subsequent transferees (Public and then back again to GBC).  However, those transfers were not transfers of "property of the Debtor" and therefore, they cannot be avoided under §544(a)(3).  Once the debtor has his or her interest in property to the initial transferee, the subsequent transfer of that interest by assignment to a subsequent transferee does not involve a transfer of the debtor's property, a necessary element of a §544(a)(3) claim.[18]  Such subsequent transfers may be recoverable under 11 U.S.C. §550, but §550 provides only a "secondary cause of action" after the trustee has established an entitlement to avoid a transfer under one of the other Code avoidance provisions. See In re Resource, Recycling & Remediation, Inc., 314 B.R.

---

[18]     See In re Cook, 457 F.3d 561, 567 (6th Cir. 2006) (citing cases); In re Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999);  In re Trierweiler, 484 B.R. 783, 796 (B.A.P. 10th Cir. 2012); In re Kunze, 459 B.R. 468, 472-75 (Bankr. D. Kan. 2011) (citing cases); In re Williams 395 B.R. 33, 44 (Bankr. S.D. Ohio 2008).

62, 69 (Bankr. W.D. Pa. 2004).[19]

In short, all of the other transactions described in the Amended Complaint that lacked

public recordation were, at best, subsequent transfers of the Debtor's initially transferred property

interest and all of the other entities identified in the Amended Complaint are, at best, subsequent

transferees. If the Debtor (employing the trustee's powers) cannot avoid the initial transfer of his

property under the §544(a)(3) – and it is obvious that he cannot – then he may not follow the

property and recover from subsequent transferees under §550.[20]

**3.**

There is an additional, independent reason why the Debtor's §544(a)(3) lacks merit.

In the Amended Complaint, the Debtor candidly acknowledges that the C.P. Court

---

[19]     The described in the text is clear from the plain language of §550:

> [**T**]**o the extent that a transfer is avoided** under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, **the trustee may recover**, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
>
> (1) **the initial transferee** of such transfer or the entity for whose benefit such transfer was made; **or**
>
> (2) **any immediate or mediate transferee of such initial transferee**.

(emphasis added).

[20]     As a result, assuming arguendo that Montgomery County, Pa v. MERSCORP is good law and will be affirmed on appeal, it is inapposite to the Debtor's claim under §544(a)(3). Mortgage assignments may be transfers of property within the meaning of the state recording statutes, but the assignment involves a transfer of the mortgagee/initial transferee's interest in the real estate, not the transfer of property of the mortgagor/debtor.

Decision, while not reduced to judgment, was indexed in the county judgment index on

December 5, 2013 maintained by the Prothonotary, (see Am. Compl. ¶¶ 27-28) and, once so

indexed, the C.P. Court Decision imposed a lien on the Property pursuant to Pa. R. Civ. P.

3021(a)(1) and 3022(a).

This fact alone defeats the Debtor's claim.  The indexing of the C.P. Court decision,

which determined that GFC was entitled to foreclose on a mortgage based on a debt of

$381,491.77, gave notice to the world, prior to the bankruptcy filing, of the existence of GFC's

mortgage lien position.  Thus, the bankruptcy trustee, as a hypothetical purchaser for value as of

the commencement of the Debtor's bankruptcy case on June 10, 2014, had notice of GFC's lien

position.  That notice "defeats the claims of [the] subsequent purchaser."  McCannon, 679 F.2d

at 15.  Even if the Debtor may exercise the trustee's avoidance powers, he cannot obtain priority

over GFC's lien position or over the lien position of its undisputed successor-in-interest, Gelt.


**4.**

I make two (2) final points regarding the Debtor's §544(a)(3) claim.

First, I am dismissing Counts I and II as to all Defendants, even though Gelt is the only

Defendant who appeared.  Based on the allegations in the Amended Complaint and my analysis

above, there is no plausible theory by which the Debtor can set aside any mortgage interest that

any of the other Defendants may have in the Property.  Further, litigation of the issue based on

the Amended Complaint would be futile.

Second, the Debtor's initial Complaint was dismissed for failure to state a claim, but with

leave to amend.  Having determined the Amended Complaint to be legally insufficient, I perceive

no other factual matter that the Debtor could allege which would cure the inadequacies in the

pleading.  Therefore, I find it appropriate to dismiss the Debtor's §544(a)(3) claim (Counts I and

II) with prejudice.


## VI.  THE DEBTOR'S EQUITABLE SUBORDINATION CLAIM

In Count III of the Amended Complaint, the Debtor requests that Gelt's claim be

equitably subordinated or stricken entirely.

In neither the Amended Complaint, nor his response to the Motion, has the Debtor

identified the source of legal authority for the relief requested.

I am not aware of any legal authority permitting a bankruptcy court to strike, disallow or

avoid an interest in property, such as a mortgage, based solely on "inequitable conduct."  A

bankruptcy court is not a "roving commission" with the power "to do equity" as it pleases.  In re

Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004).  Therefore, with respect to the

Debtor's request that the Mortgage be stricken, Count III will be dismissed without further

discussion.

There is, however, statutory authority for the subordination of claims.  11 U.S.C. §510(c)

provides:

> after notice and a hearing, the court may —
>
> (1)  under principles of equitable subordination, subordinate for purposes
> of distribution all or part of an allowed claim to all or part of another
> allowed claim or all or part of an allowed interest to all or part of
> another allowed interest; or
>
> (2)  order that any lien securing such a subordinated claim be transferred
> to the estate.

Most courts have held that there are three (3) elements to an equitable subordination

claim:

> (1) the claimant must have engaged in some type of inequitable conduct;
>
> (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and
>
> (3) equitable subordination of the claim must not be inconsistent with the provisions of the [B]ankruptcy [C]ode.

See In re SubMicron Systems Corp., 432 F.3d 448, 461-62 (3d Cir. 2006); Citicorp Venture

Capital, Ltd. V. Comm. Of Unsecured Creditors, 160 F.3d 982, 986-87 (3d Cir. 1998).[21]

In support of the relief sought in Count III, paragraphs 55-57 of the Amended Complaint

refer to the following conduct:

> (1) failure "to follow the order of this Court regarding noticing of foreclosure actions to creditors," (Am. Compl. ¶ 55);
>
> (2) failure of Gelt's predecessors to record the mortgage assignments, (Id. ¶ 56);
>
> (3) failure to credit payments made on account, (Id. ¶ 57).

The allegations, individually and collectively, fail to state a plausible claim for relief

under §510(c)(2).

First, the allegation regarding noticing of foreclosure actions to creditors is

incomprehensible.  The Debtor neither identified the "order" referenced in Paragraph 55 of the

Amended Complaint nor offered any explanation (in the Amended Complaint or his response to

the Motion) as to why the bankruptcy court would issue an order regulating state court

---

[21]      Our Court of Appeals, however, has declined to decide the first element is essential and whether equitable subordination may be ordered in the absence inequitable creditor conduct.  Submicron, 432 F.3d at 462.

foreclosure practice.  Further, the Debtor neglected to describe any harm he or the bankruptcy estate suffered as a result of the asserted notice defect.

Second, to the extent that the failure to record the mortgage assignments has any legal significance beyond its role in the Debtor's (failed) §544(a)(3) claim, the Debtor has not described any harm that he or the estate has suffered, much less harm severe enough to warrant the equitable relief requested.

Finally, I know of no legal authority, and the Debtor has not cited any, supporting the proposition that a failure to accurately credit an obligor for all of the payments made on account of a mortgage loan account, by itself, states a claim for equitable subordination of the mortgage or avoidance of the mortgage.  A dispute regarding the crediting of payments certainly is relevant in determining the amount of an allowed claim in a contested matter arising from an objection to a proof of claim.  But, without some additional facts indicating that the Debtor or the bankruptcy estate was harmed in some fashion, other than by the need to object to a proof of claim, the Debtor has not stated a claim.  The mere failure to give full credit for all payments does not support the relief requested.

Just as I am dismissing Counts I and II with prejudice, I also will dismiss Count III with prejudice.  The Debtor has been given ample opportunity to plead facts supporting the claims asserted.  His failure to do so in the Amended Complaint warrants a dismissal with prejudice.


## VII.  CONCLUSION

For the reasons set forth above, the Motion will be granted and Counts II and III of the Amended Complaint will be dismissed with prejudice.  Count I will be dismissed without

prejudice.[22]  An appropriate order follows.

Date: **February 27, 2015**

_____
**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

---

[22]     As described in n.14, <u>supra</u>, I construed Count I as mainly seeking superfluous
declaratory relief in the form of an order declaring that the Debtor has the authority to avoid the
Mortgage.  However, the Debtor's "wherefore clause" requests an "order declaring fixing [sic] the
amount of the claim of National Penn Bank."  The Amended Complaint contains no allegations that
appear to relate this form of relief, which, in any event is likely determination more properly raised as an
objection to a proof of claim.  As a result,  To the extent that Count I seeks a determination of the amount
of National Penn Bank's claim, the dismissal will be without prejudice.